UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIENNE ROCKENHAUS,

      Plaintiff,

v.

STYLIANOS AGAPIOU, United States
Probation Officer; JEFFRY KONAL,
Supervising United States Probation Officer;
DION THOMAS, Deputy Chief United States
Probation Officer, JOHN DOE, United States
Marshals Service,

      Defendants.

Civil No. 25-12736

Honorable Jane M. Beckering
Magistrate Judge Sally J. Berens

---

## MOTION TO DISMISS

---

Defendants, by their attorneys, Jerome F. Gorgon Jr., United States Attorney for the Eastern District of Michigan, and Benajmin A. Anchill, Assistant United States Attorney, move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The grounds for this motion are set forth with more specificity in the attached brief. Pursuant to Local Rule 7.1(a), on March 27, 2026, the undersigned attorney sent a letter to Plaintiff seeking concurrence in the relief sought in this motion. Concurrence was not forthcoming.

Respectfully Submitted,

JEROME F. GORGON JR.
United States Attorney


 /s/ Benjamin A. Anchill
BENJAMIN A. ANCHILL (P70968)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9566
Dated: April 9, 2026          benjamin.anchill@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ADRIENNE ROCKENHAUS,

    Plaintiff,

v.

STYLIANOS AGAPIOU, United States
Probation Officer; JEFFRY KONAL,
Supervising United States Probation Officer;
DION THOMAS, Deputy Chief United States
Probation Officer, JOHN DOE, United States
Marshals Service,

    Defendants.

Civil No. 25-12736

Honorable Jane M. Beckering
Magistrate Judge Sally J. Berens

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS

---

### Issues Presented

1. Should the official capacity claims be dismissed because Plaintiff fails to identify a waiver of sovereign immunity?

2. Is the claim for injunctive relief moot because the property has been returned?

3. Does Plaintiff lack standing to bring constitutional claims belonging to her husband?

4. Does Plaintiff's excessive force claim fail for lack of specificity?

5. Should the *Bivens* claims be dismissed because no *Bivens* remedy lies in the context of this case?

6. Are the probation officer defendants entitled to absolute quasi-judicial immunity?

7. Is the John Doe U.S. Marshal defendant entitled to qualified immunity?

8. Are the claims barred by the doctrine in *Heck v. Humphrey?*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................. iv

INTRODUCTION ...............................................................................................1

BACKGROUND ................................................................................................2

    A.  Mr. Rockenhaus' criminal proceedings..........................................................2

    B.  This lawsuit..............................................................................................3

ARGUMENT .....................................................................................................4

    A.  The Court lacks jurisdiction over the official capacity claims.......................4

    B.  The Court lacks jurisdiction over the claim for injunctive relief. ..................6

    C.  Ms. Rockenhaus lacks standing for claims personal to her husband. .............6

    D.  The excessive force claim fails for lack of specificity. .................................7

    E.  All *Bivens* claims should be dismissed because there is no *Bivens* remedy. ..8

        1.  This case presents a new context................................................................10

        2.  Special factors counsel hesitation. ............................................................15

    F.  The probation officer defendants are entitled to quasi-judicial immunity.....22

    G.  The U.S. Marshals Service employee is entitled to qualified immunity.......23

    H.  *Heck v. Humphrey* bars Ms. Rockenhaus' claims. ......................................24

CONCLUSION.................................................................................................25

CERTIFICATION OF SERVICE.........................................................................27

**TABLE OF AUTHORITIES**

**Cases**

*Alderman v. United States*, 394 U.S. 165 (1969)......................................................6

*Anderson v. Creighton*, 483 U.S. 635 (1987) .........................................................20

*Annappareddy v. Pascale*, 996 F.3d 120 (4th Cir. 2021) ................................ 13, 16

*Apsey v. Chester Twp.*, 608 F. App'x 335 (6th Cir. 2015) ........................................7

*Bacon v. Marshall*, 2023 WL 8469937 (10th Cir. Dec. 7, 2023) ...........................21

*Blakely v. United States*, 276 F.3d 853 (6th Cir. 2002) .............................................5

*Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438 (6th Cir. July 25, 2023)... 12, 13

*Cantu v. Moody*, 933 F.3d 414 (5th Cir. 2019).......................................................14

*Carlson v. Green*, 446 U.S. 14 (1980) .....................................................................9

*Carras v. Williams*, 807 F.2d 1286 (6th Cir. 1986)..................................................6

*Carvajal v. United States*, No. 3:20-CV-567-S-BK, 2021 WL 2814883

    (N.D. Tex. May 11, 2021), *report and recommendation adopted,*

    No. 3:20-CV-567-S-BK, 2021 WL 2808966 (N.D. Tex. July 6, 2021)..............21

*Challenger v. Bassolino*, 2023 WL 4287204 (D.N.J. Jun. 30, 2023)......................10

*Chappell v. Wallace*, 462 U.S. 296 (1983) ............................................................22

*Church of Scientology of California v. United States*, 506 U.S. 9 (1992)................6

*Cienciva v. Brozowski*, No. 3:20-CV-2045, 2022 WL 2791752

    (M.D. Pa. July 15, 2022)...................................................................................14

*Coleman v. Northville Forensic Lab'y*, No. 2:19-CV-11197,

    2019 WL 2433352 (E.D. Mich. June 11, 2019) ...............................................25

*Collins v. Godbee*, No. 15-CV-11756, 2019 WL 4393550

    (E.D. Mich. Sept. 13, 2019) ...............................................................................8

*Conrad Rockenhaus v. Agapiou, et al.*, No. 25-12716 (E.D. Mich.)........................3

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001).................................................13

*Crowe v. Gee*, 2022 WL 17360272 (D.N.M. Dec. 1, 2022)...................................10

*Davis v. Passman*, 442 U.S. 228 (1979) ............................................... 9, 13

*Egbert v. Boule*, 596 U.S. 482 (2022)............................................. passim

*Elhady v. Unidentified CBP Agents*, 18 F.4th 88 (6th Cir. 2021) .................. 8, 9, 10

*Enriquez-Perdomo v. Newman*, 149 F.4th 623 (6th Cir. 2025)..............................13

*FAA v. Cooper*, 566 U.S. 284 (2012)........................................................5

*Faber v. Smith*, No. 17-2523, 2018 WL 6918704 (6th Cir. June 6, 2018)....... 23, 25

*Farah v. Weyker*, 926 F.3d 492 (8th Cir. 2019) ......................................19

*Farias v. Lewis*, 247 F. App'x 894 (9th Cir. 2007) .....................................7

*FDIC v. Meyer*, 510 U.S. 471 (1994) ...................................................5

*Frazier v. Crump*, No. 16-6687, 2017 WL 5664900 (6th Cir. Oct. 17, 2017) ........23

*Freeman v. Lincalis*, 158 F.4th 166 (3d Cir. 2025) ...................................10

*Gonzales v. U.S. Dist. Ct. for the E. Dist. of Mich.*, No. 1:09-CV-541,
    2009 WL 2959865 (W.D. Mich. Sept. 10, 2009) ...............................25

*Heck v. Humphrey*, 512 U.S. 477 (1994)........................................... 24, 25

*Hernandez v. Mesa*, 589 U.S. 93 (2020)...................................................8

*Hudson v. Michigan*, 547 U.S. 586 (2006) ..............................................16

*Huffer v. Bogen*, 503 F. App'x 455 (6th Cir. 2012)....................................23

*In re Complaint of Jud. Misconduct*, 567 F.3d 429 (9th Cir. 2009) ........................17

*Jackson v. United States*, 751 F.3d 712 (6th Cir. 2014) ..............................6

*Kent v. Oakland Cty.*, 810 F.3d 384 (6th Cir. 2016)...................................24

*Kentucky v. Graham*, 473 U.S. 159 (1985).............................................5

*Laoye v. United States*, No. CV145195MASDEA, 2020 WL 730397
    (D.N.J. Feb. 13, 2020).................................................................7

*Libman v. United States*, 2024 WL 2269271 (9th Cir. May 20, 2024) .................13

*Loggins v. Franklin Cnty., Ohio*, 218 F. App'x 466 (6th Cir. 2007).......................22

*Marcilis v. Twp. of Redford*, 693 F.3d 589 (6th Cir. 2012)..................................7

*Massaquoi v. Fed. Bureau of Investigation,* No. 22-55448,

   2023 WL 5426738 (9th Cir. Aug. 23, 2023) ......................................13

*Mejia v. Miller*, 61 F.4th 663 (9th Cir. 2023) ..........................................17

*Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668 (6th Cir. 2013).........................5

*New York v. Ferber*, 458 U.S. 747 (1982) ................................................6

*Oliva v. Nivar*, 973 F.3d 438 (5th Cir. 2020).................................... 12, 15

*Oliveras v. Basile*, 440 F. Supp. 3d 365 (S.D.N.Y. 2020).......................................13

*Orellano v. Godec*, 145 F.4th 516 (4th Cir. 2025) ................................................22

*Parker v. Manzano*, 2023 WL 2060714 (S.D. Cal. Feb. 16, 2023).........................10

*Payton v. New York*, 445 U.S. 573 (1980)..................................................14

*Poulin v. Waite*, No. 22-3050, 2024 WL 617730 (7th Cir. Feb. 14, 2024) ...... 12, 14

*Reetz v. United States*, 224 F.3d 794 (6th Cir. 2000) ..................................6

*Reilly v. Herrera*, 622 F. App'x 832 (11th Cir. 2015)..........................................25

*Robinson v. Sauls*, 102 F.4th 1337 (11th Cir. 2024)..................................17

*Schiff v. Dorsey*, 877 F. Supp. 73 (D. Conn. 1994) ..................................20

*Schweiker v. Chilicky*, 487 U.S. 412 (1988) .............................................20

*Sigalovskaya v. Braden,* No. 15-CV-34 (LDH), 2023 WL 6385761

   (E.D.N.Y. Sept. 29, 2023), *aff'd* 149 F.4th 226 (2d Cir. 2025).........................20

*Silva v. United States*, 45 F.4th 1134 (10th Cir. 2022)..................................... 15, 21

*Smith-Garcia v. Burke*, 815 F. App'x 187 (9th Cir. 2020)......................................10

*Timson v. Wright*, 532 F.2d 552 (6th Cir. 1976)..................................................23

*United States v. Rockenhaus*, No. 23-20701 (E.D. Mich.) .......................................2

*United States v. Rockenhaus*, No. 25-1974 (6th Cir. Jan. 26, 2026) .........................3

*Webb v. United States*, 789 F.3d 647 (6th Cir. 2015)..............................................24

*White v. Pauly*, 580 U.S. 73 (2017) ..................................................23

*Wilkie v. Robbins*, 551 U.S. 537 (2007)..................................................22

*Wilson v. Buescher*, 2022 WL 7025098 (D. Colo. Oct. 12, 2022).........................10

*Ziglar v. Abbasi*, 582 U.S. 120 (2017)................................................................ passim

**Statutes**

18 U.S.C. § 3602 .......................................................................................................12

28 U.S.C. § 1495 .......................................................................................................19

28 U.S.C. § 2255 .......................................................................................................19

28 U.S.C. § 2513(e) ...................................................................................................19

28 U.S.C. § 351 .........................................................................................................16

28 U.S.C. § 566(a) ....................................................................................................22

28 U.S.C. §§  351-364 ..............................................................................................16

5 U.S.C. § 301 ...........................................................................................................18

5 U.S.C. app. 3 § 3 ....................................................................................................18

5 U.S.C. app. 3 § 8E(b)(2) ........................................................................................18

**Other Authorities**

https://oig.justice.gov/hotline/submit_complaint.....................................................18

Inspector General Act of 1978...................................................................................18

Judicial Conduct and Disability Act of 1980.............................................................16

United States Courts, Judges & Judgeships, FAQs: *Filing a Judicial Conduct or
    Disability Complaint Against a Federal Judge* .................................................17

**Regulations**

28 C.F.R. § 0.5(a)......................................................................................................18

## INTRODUCTION

This *Bivens* case is brought by Adrienne Rockenhaus, the wife of a former federal parolee, against three United States probation officers and an unnamed John Doe employee of the United States Marshals Service. Ms. Rockenhaus' husband, Conrad Rockenhaus, was on supervised release after completing a custodial sentence for his conviction for a federal crime in the Eastern District of Texas.

Ms. Rockenhaus accuses the probation officers of a myriad of constitutional violations, including fabricating evidence leading to Mr. Rockenhaus' arrest for violating the conditions of his supervised release, excessive force during the arrest, and First Amendment retaliation for protected speech. Ms. Rockenhaus also claims that an unnamed employee of the U.S. Marshals Service engaged in "misconduct" by driving recklessly while taking Mr. Rockenhaus to jail and by showing Mr. Rockenhaus an inappropriate text message. Ms. Rockenhaus seeks monetary relief and injunctive relief in the form of the return of her seized phones.

All claims should be dismissed. Ms. Rockenhaus fails to identify a valid waiver of sovereign immunity for her official capacity claims. The claim for injunctive relief is moot because the action sought, return of property, has been taken. Ms. Rockenhaus lacks standing to bring constitutional claims belonging to her husband. No *Bivens* remedy lies in the context of his case. The probation officers are entitled to absolute quasi-judicial immunity; the John Doe defendant, even if

identified and served, would be entitled to qualified immunity. The claims imply the invalidity of Mr. Rockenhaus' conviction and are barred by *Heck v. Humphrey*.

## BACKGROUND

### A.    Mr. Rockenhaus' criminal proceedings

In 2023, Conrad Rockenhaus was convicted in the U.S. District Court for the Eastern District of Texas of causing intentional damage to a protected computer and sentenced to 40 months of imprisonment, followed by a three-year term of supervised release. *See United States v. Rockenhaus*, No. 23-20701 (E.D. Mich.), ECF No. 1-1, PageID.2-4. This Court accepted transfer of jurisdiction of this matter in December 2023. *Id.* at ECF No. 2, PageID.10.

In April 2025, while Mr. Rockenhaus was on supervised release, the United States Probation Office, specifically, Defendant Jeffry Konal, a Supervisory Probation Officer, filed a violation report and a petition for an arrest warrant against Mr. Rockenhaus, alleging that he violated certain conditions of his supervised release, including: (i) testing positive for marijuana, (ii) failing to make restitution payments, (iii) failing to report to his probation officer as directed, (iv) opening new lines of credit without approval, and (v) possessing and using an unauthorized cellular device. *Id.* at ECF No. 3, PageID.38-42. Mr. Rockenhaus was arrested on the violation pursuant to an arrest warrant, *id.* at ECF No. 4, and made his initial appearance. *Id.* at ECF No. 5/6/25 Minute Entry. Subsequently, at his supervised

2

release violation hearing, Mr. Rockenhaus admitted that he violated the conditions of his supervised release, stating: "I accept responsibility and I'm guilty, Your Honor." *Id.* at 5/13/25 Minute Entry; *Id.* at ECF No. 40, PageID.153.

In October 2025, the Court sentenced Mr. Rockenhaus to six months in prison for the violations, and revoked Mr. Rockenhaus' term of supervised release "with no new term to follow." *Id.* at ECF No. 27, PageID.88-89. The sentence was affirmed by the Sixth Circuit on direct appeal. *See United States v. Rockenhaus*, No. 25-1974, Doc. 26-1 (6th Cir. Jan. 26, 2026) (unpublished order). On or about January 8, 2026, Mr. Rockenhaus' phones were returned. On March 2, 2026, Mr. Rockenhaus was released from the custody of the Bureau of Prisons.

## B.      This lawsuit

In August 2025, Ms. Rockenhaus filed this lawsuit arising out of Mr. Rockenhaus' arrest for his supervised release violations. Mr. Rockenhaus filed a similar lawsuit. *See Conrad Rockenhaus v. Agapiou, et al.*, No. 25-12716 (E.D. Mich.), ECF No. 1. The Court initially consolidated the two suits, *id.* at ECF No. 17, PageID.105-106, but later severed them at the request of Mr. Rockenhaus due to a breakdown in his relationship with his wife. *Id.* at ECF No. 27, PageID.158-159. As such, the two suits have been "return[ed] . . . to their separate statuses." *Id.*

Ms. Rockenhaus names four defendants: (1) U.S. Probation Officer Stylianos Agapiou; (2) Supervisory U.S. Probation Officer Jeffry Konal; (3) Deputy Chief

U.S. Probation Officer Dion Thomas; and (4) an unnamed John Doe officer with the U.S. Marshals Service. Each defendant is sued in their official and individual capacities. ECF No. 1, PageID.2-3.

Ms. Rockenhaus brings the following claims:

1. Defendant Konal violated Ms. Rockenhaus' Fourth Amendment rights by fraudulently procuring the warrant and fabricating evidence for Mr. Rockenhaus' arrest for his supervised release violations. *Id.* at PageID.7.

2. "Officers" violated the Rockenhauses' Fourth Amendment rights by using excessive force during Mr. Rockenhaus' arrest for his supervised release violations, including ordering Ms. Rockenhaus to place her hands on a vehicle and threatening the Rockenhauses with a K-9 and brandishing firearms. *Id.*

3. Defendants Agapiou and Konal violated Ms. Rockenhaus' Fourth and Fifth Amendment rights by illegally seizing two of her phones. *Id.*

4. Defendants Thomas and Konal retaliated against Ms. Rockenhaus in violation of her First Amendment after Ms. Rockenhaus engaged in protected activity in the form of lodging a complaint against Defendant Agapiou. *Id.* at PageID.8-9.

5. Defendant John Doe, an employee of the U.S. Marshals Service, engaged in "misconduct" when transporting Mr. Rockenhaus to jail by driving "at high speed on the shoulder of the highway while texting," and by showing Mr. Rockenhaus a text message about Ms. Rockenhaus stating, "His wife had nice tits." *Id.* at PageID.9.

Ms. Rockenhaus seeks monetary damages and injunctive relief in the form of the return of her phones. *Id.* at PageID.11.

## ARGUMENT

**A.    The Court lacks jurisdiction over the official capacity claims.**

4

The official capacity claims should be dismissed on sovereign immunity grounds. Such claims are treated as a suit against the employing entity, the U.S. Courts in the case of the probation officers and the U.S. Marshals Service in the case of the John Doe defendant. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). "Sovereign immunity is jurisdictional in nature." *Meyer*, 510 U.S. at 475. It implicates the Court's subject-matter jurisdiction because the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* (citation omitted).

"The circumstances of [the waiver of sovereign immunity] must be scrupulously observed and not expanded by the courts." *Blakely v. United States*, 276 F.3d 853, 864 (6th Cir. 2002) (alterations in original). This means that "waiver of sovereign immunity must be unequivocally expressed in statutory text," and "strictly construed in favor of the Government." *FAA v. Cooper*, 566 U.S. 284, 289-90 (2012) (cleaned up).

"Suits brought against the United States are . . . dismissed unless a claimant can point to an express waiver of sovereign immunity." *Jackson v. United States*,

5

751 F.3d 712, 716 (6th Cir. 2014). Ms. Rockenhaus bears the burden to "identify a waiver of sovereign immunity in order to proceed against the United States. If [a plaintiff] cannot identify a waiver, the claim must be dismissed on jurisdictional grounds." *Reetz v. United States*, 224 F.3d 794, 795 (6th Cir. 2000). Ms. Rockenhaus fails to plead a valid waiver of sovereign immunity that would permit her official-capacity claims. Such claims should be dismissed.

**B.      The Court lacks jurisdiction over the claim for injunctive relief.**

On or about January 8, 2026, Mr. Rockenhaus' phones were returned. "Mootness results when events occur during the pendency of a litigation which render the court unable to grant the requested relief." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986). The Court lacks jurisdiction over moot claims. *See Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992). Because the phones have now been returned, this claim is moot.

**C.      Ms. Rockenhaus lacks standing for claims personal to her husband.**

Ms. Rockenhaus lacks standing to bring constitutional claims that are personal to her husband. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Alderman v. United States*, 394 U.S. 165, 174 (1969); *see also New York v. Ferber*, 458 U.S. 747, 767 (1982) (recognizing "the personal nature of constitutional rights" as a "cardinal principle[] of our constitutional order"). Here, Ms. Rockenhaus lacks standing to claim that her

constitutional rights were violated by the allegedly unconstitutional arrest and transport of her husband, along with alleged excessive force directed at her husband. *See Farias v. Lewis*, 247 F. App'x 894, 894 (9th Cir. 2007) ("Because constitutional rights are personal in nature, Farias lacks standing to allege the deprivation of his wife's constitutional rights."); *Laoye v. United States*, No. CV145195MASDEA, 2020 WL 730397, at *2 (D.N.J. Feb. 13, 2020).

**D.      The excessive force claim fails for lack of specificity.**

Ms. Rockenhaus' excessive force claim, to the extent directed at the alleged force toward her, should be dismissed for failure to state a claim. Ms. Rockenhaus does not allege with required specificity who violated her constitutional right to be free from excessive force. To state a claim under *Bivens*, a complaint must "allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012). This is because "each defendant's liability must be individually assessed to ensure that no defendant is improperly held liable for the conduct of another." *Apsey v. Chester Twp.*, 608 F. App'x 335, 339 (6th Cir. 2015). Where a *Bivens* complaint "refers to all defendants generally and categorically," plaintiff fails to state a claim on which relief may be granted. *Marcilis*, 693 F.3d at 596–97.

Ms. Rockenhaus alleges excessive force against a class of unnamed people – "officers" – without specifying which ones. ECF No. 1, PageID.7. It is not even clear

7

whether this claim is brought against Defendants. The complaint fails to state an excessive force claim. *See Collins v. Godbee*, No. 15-CV-11756, 2019 WL 4393550, at *3 (E.D. Mich. Sept. 13, 2019) (dismissing case "alleg[ing] that 'defendants' violated his rights without alleging how each defendant did so personally").

**E.      All *Bivens* claims should be dismissed because there is no *Bivens* remedy.**

"In a lawsuit against federal officers, the first question a court should ask is whether a cause of action exists." *Elhady v. Unidentified CBP Agents*, 18 F.4th 880, 881 (6th Cir. 2021). The answer to that question here is even easier than usual because probation officers are categorically not subject to *Bivens* claims.

*Bivens* remedies are the product of what the Supreme Court has called an "*ancien regime*" where it "would imply causes of action" not present in the text of a federal statute. *Ziglar v. Abbasi*, 582 U.S. 120 (2017). Over the last 40 years, the Court reversed course and "consistently rebuffed requests to add to the claims allowed under *Bivens*." *Hernandez v. Mesa*, 589 U.S. 93, 101 (2020).

The *Bivens* Court initially inferred in the Fourth Amendment a cause of action to sue agents who allegedly entered Webster Bivens' home without a warrant or probable cause and used unreasonable force while searching the residence. *Bivens*, 403 U.S. at 391. Since that decision in 1971, the Supreme Court has only recognized two other constitutional provisions that may give rise to a private right of action for damages against individual federal agents: (1) the Fifth Amendment's Due Process

Clause as applied to gender discrimination, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and (2) the Eighth Amendment as applied to inadequate prisoner medical care, *Carlson v. Green*, 446 U.S. 14, 17–18 (1980).

The three decisions in the *Bivens* trilogy – *Bivens*, *Davis*, and *Carlson* – "rest on an outdated conception of [the] judicial role," and "were handed down at a time when the Court routinely assumed that it was the judge's job to infer a cause of action whenever a substantive provision may have been violated, even if the text didn't offer one." *Elhady*, 18 F.4th at 883. "Expanding the *Bivens* remedy is now a disfavored judicial activity" *Abbasi*, 582 U.S. at 135 (cleaned up).

To determine whether a *Bivens* claim exists, courts ask: (1) "whether the case presents a new *Bivens* context – i.e., is it meaningfully different from the three cases in which the Court has implied a damages action" and (2) if so, whether "special factors indicate that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert v. Boule*, 596 U.S. 482, 483 (2022) (cleaned up). The existence of "any" special factor "alone" is enough to "limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id*. at 493 (cleaned up). Courts have a "responsibility" to "evaluate any grounds that counsel against *Bivens* relief." *Id.* at 497 n.3. Recognizing a *Bivens* cause of action "is an extraordinary act that places great stress on the separation of powers," *id.*, and is only appropriate in "the most unusual circumstances." *Id*. at 486.

As to the claims against the probation officers, the Court need not belabor its *Egbert* analysis because probation officers are categorically excluded from *Bivens* claims.[1] There is nothing "unusual" about the allegations in this case to warrant recognition of a judicially created damages remedy. Certainly, there is at least "one" – and in fact, there are several – rational reasons to think "Congress might be better equipped" to fashion a damages remedy against probation officers.

The Court asks whether this case presents "a new *Bivens* context" and, if so, whether there are "special factors indicating that the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492. This test boils down "to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Id.* "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.*

### 1.     This case presents a new context.

Here, the context is new. "The context is new if it differs in virtually any way from the *Bivens* trilogy." *Elhady*, 18 F.4th at 883. "[T]he new-context inquiry is easily satisfied." *Abbasi*, 582 U.S. at 149. The Supreme Court has "never offered an

---

[1] *See, e.g.*, *Freeman v. Lincalis*, 158 F.4th 166, 182 (3d Cir. 2025); *Smith-Garcia v. Burke*, 815 F. App'x 187, 188 (9th Cir. 2020); *Challenger v. Bassolino*, 2023 WL 4287204, at *10 (D.N.J. Jun. 30, 2023); *Parker v. Manzano*, 2023 WL 2060714, at *4 (S.D. Cal. Feb. 16, 2023); *Crowe v. Gee*, 2022 WL 17360272, at *2 (D.N.M. Dec. 1, 2022); *Wilson v. Buescher*, 2022 WL 7025098, at *5 (D. Colo. Oct. 12, 2022).

'exhaustive' accounting of . . . scenarios" that are meaningful enough to make a given context a new one "because no court could forecast every factor that might 'counse[l] hesitation.'" *Egbert*, 596 U.S. 492–93. However, the Court provided a non-exhaustive list of circumstances that make the context new, including "the rank of the officers involved," "the constitutional right at issue," "the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted," "the statutory or other legal mandate under which the officer was operating," "the risk of disruptive intrusion by the Judiciary into the functioning of other branches," and "the presence of potential special factors that previous *Bivens* cases did not consider. *Abbasi*, 582 U.S. at 140.

"A claim may arise in a new context even if it is based on the same constitutional provision as a case in which a damages remedy was previously recognized." *Hernandez*, 589 U.S. at 103. "[A] modest extension is still an extension." *Abbasi*, 582 U.S. at 147. Even in cases that "involve similar allegations" to *Bivens*, "and thus arguably present 'almost parallel circumstances' or a similar 'mechanism of injury,' . . . these superficial similarities are not enough to support the judicial creation of a cause of action." *Egbert*, 596 U.S. at 495.

Ms. Rockenhaus' First Amendment retaliation claim is quickly disposed of, as *Egbert* explicitly held that "there is no *Bivens* action for First Amendment retaliation." *Egbert*, 596 U.S. at 499. As for the Fourth Amendment claims, although

11

Ms. Rockenhaus' claim arises under the same amendment as the claims in *Bivens*, that is where the similarities end. "Courts do not define a *Bivens* cause of action at the level of 'the Fourth Amendment' or even at the level of 'the unreasonable-searches-and-seizures clause.'" *Oliva v. Nivar*, 973 F.3d 438, 442 (5th Cir. 2020). The meaningful ways in which this case differs include the category of defendants involved, the legal mandate under which Defendants operated, the extent of judicial guidance, and the conduct of the officers.

*Different category of defendants*. The defendants in *Bivens* were agents of the Federal Bureau of Narcotics (DEA's predecessor). In contrast, Defendants here are probation officers and an unknown U.S. Marshals Service employee. A *Bivens* remedy has never been recognized in this context. "A probation officer is a clear example of a new defendant that implicates distinct separation-of-powers issues." *Poulin v. Waite*, No. 22-3050, 2024 WL 617730, at *2 (7th Cir. Feb. 14, 2024). "Congress created the role of probation officers as an arm of the court, 18 U.S.C. § 3602, and thus they possess absolute immunity for their quasi-judicial functions." *Id.* The same is true of the U.S. Marshals Service: they are a new category of defendant. *See Cain v. Rinehart*, No. 22-1893, 2023 WL 6439438, at *4 (6th Cir. July 25, 2023) (holding that members of the U.S. Marshals Service are a new category of defendants). Here, as in *Egbert*, the claims seek to extend *Bivens* to "a new category of defendants," which is by itself a new context. *Egbert*, 596 U.S. at

12

492; *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ("we have consistently refused to extend *Bivens* liability to any . . . new category of defendants").

*Different legal mandate*. The Supreme Court has also held that a case might present a new context "because of the legal mandate under which the officer was operating." *Abbasi*, 582 U.S. at 140. Probation officers operate under a different legal mandate than the Congressman in *Davis* or the narcotics agents in *Bivens*. Moreover, *Bivens* involved a warrantless entry into the plaintiff's home at night based on suspected drug offenses, *Bivens*, 403 U.S. at 389, while Ms. Rockenhaus' claims here involve an arrest of her husband, authorized by a warrant, for supervised release violations that Mr. Rockenhaus later admitted.

Post-*Egbert* cases hold that the existence of a warrant presents a new context. *See Enriquez-Perdomo v. Newman*, 149 F.4th 623, 632 (6th Cir. 2025) (existence of warrant "would almost certainly create a new *Bivens* context"); *Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (existence of warrant makes context new); *Libman v. United States*, 2024 WL 2269271, at *4 (9th Cir. May 20, 2024) ("Unlike the defendants in *Bivens*, the Defendants here had a warrant . . ."); *Massaquoi v. Fed. Bureau of Investigation,* No. 22-55448, 2023 WL 5426738, at *2 (9th Cir. Aug. 23, 2023) (warrant makes context new); *Cain*, 2023 WL 6439438, at *3 (same and citing cases); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 371-72 (S.D.N.Y. 2020) (defendants with arrest warrant operated under different legal mandate);

13

*Cienciva v. Brozowski*, No. 3:20-CV-2045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (collecting cases; "the presence of a warrant is a crucial difference"); *Poulin*, 2024 WL 617730, at *2 ("Poulin was on supervised release, unlike any plaintiff in a recognized *Bivens* action. This status matters because people on supervised release routinely have their constitutional rights lawfully limited."). Because Ms. Rockenhaus' claims involve a different legal mandate under which Defendants were operating, it presents a new context.

*Different judicial guidance*. "'Judicial guidance' differs across the various kinds of Fourth Amendment violations – like seizures by deadly force, searches by wiretap, *Terry* stops, executions of warrants, seizures without legal process ("false arrest"), seizures with wrongful legal process ("malicious prosecution"), etc." *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). The existence of an arrest warrant for Mr. Rockenhaus makes the extent of judicial guidance markedly different than in *Bivens*. "[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Because the narcotics agents in *Bivens*, unlike Defendants here, did not have any warrant, the extent of judicial guidance is different, giving rise to a new context.

14

The differences between Ms. Rockenhaus' claims and those in the *Bivens* trilogy cases are meaningful. "We could go on, but the point should be clear: the context is new." *Oliva*, 973 F.3d at 443.

## 2.     Special factors counsel hesitation.

"[W]e are left in no doubt [after *Egbert*] that expanding *Bivens* is not just a disfavored judicial activity, it is an action that is impermissible in virtually all circumstances." *Silva v. United States*, 45 F.4th 1134, 1140 (10th Cir. 2022) (cleaned up). There are multiple reasons to think Congress might be better suited to fashion a remedy in this new context. In a special-factors analysis, "the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Egbert*, 596 U.S. at 491-92 (quotations omitted). To answer that question, *Egbert* instructs courts to consider "whether there is *any* rational reason (even one) to think that Congress is better suited to weigh the costs and benefits of allowing a damages remedy to proceed." *Id.* at 496 (emphasis in original). "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Id.* at 492. This analysis "in most every case" should lead to the same result: "no *Bivens* action may lie." *Id.*

### a.     Alternate Remedial Structure

*Egbert* held that an alternative remedial structure forecloses a *Bivens* claim even if it "do[es] not provide complete relief." 596 U.S. at 493. In other words, court

should not infer a *Bivens* remedy for the simple reason that there exists an alternative remedial structure, even if it "does not go so far as a *Bivens* remedy would." *Annappareddy*, 996 F.3d at 137. The existence of any such alternative remedial structure, by itself, makes it inappropriate for a district court to extend *Bivens* liability to a new context. "[T]hat alone, like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 596 U.S. at 493. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 498.

Here, there are internal grievance and discipline procedures that provide Ms. Rockenhaus with a potential remedy. Where "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498. After all, "it is not credible to assert that internal discipline, which can limit successful careers, will not have a deterrent effect." *Hudson v. Michigan*, 547 U.S. 586, 599 (2006).

In the Judicial Conduct and Disability Act of 1980, 28 U.S.C. §§ 351-364, Congress set forth the process by which people can make complaints about federal court judges, but notably did not choose to allow complaints about court staff. *See* 28 U.S.C. § 351; *In re Complaint of Jud. Misconduct*, 567 F.3d 429, 431 (9th Cir.

16

2009). As to complaints about court staff, including probation officers, the public is directed by the United States Courts to "report those concerns to the clerk of the court where that individual is employed." *See* United States Courts, Judges & Judgeships, FAQs: *Filing a Judicial Conduct or Disability Complaint Against a Federal Judge.*[2] This directive by the United States Courts regarding reporting of concerns is an alternative remedial process analogous to those that courts have found to be special factors counseling hesitation in the expansion of a *Bivens* remedy. *See, e.g.*, *Mejia v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023) (noting that the plaintiff had an alternative remedy of reporting misconduct at a BLM website); *Robinson v. Sauls*, 102 F.4th 1337 (11th Cir. 2024) (USMS implemented a procedure by which "any aggrieved individual may submit a grievance by filling out an online form"). Because the United States Courts has established a process that it has determined to be sufficient to secure an adequate level of deterrence, this Court should not "second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498.

Congress has similarly set up internal grievance procedures for complaints against employees of Department of Justice components, including the U.S. Marshals Service. Like the Secretary of DHS in *Egbert*, the Attorney General is obligated to "[s]upervise and direct the administration and operation of the

---

[2] Available at: https://www.uscourts.gov/administration-policies/judicial-conduct-disability/faqs-filing-a-judicial-conduct-or-disability-complaint-against-a-federal-judge#question1

Department of Justice." 28 C.F.R. § 0.5(a); *see also* 5 U.S.C. § 301 (authorizing the head of an Executive department to "prescribe regulations for . . . the conduct of its employees"). Through the Inspector General Act of 1978, 5 U.S.C. app. 3, Congress has authorized Inspectors General across the Executive Branch to investigate and report abuses by federal law-enforcement officers, including Marshals Service personnel. *See* 5 U.S.C. app. 3 § 3. Those aggrieved may file a grievance. *See* https://oig.justice.gov/hotline/submit_complaint. DOJ's Inspector General may "investigate allegations of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice or may, in the discretion of the Inspector General, refer such allegations to the Office of Professional Responsibility or the internal affairs office." 5 U.S.C. app. 3 § 8E(b)(2).

The above grievance and investigation procedures governing the conduct of probation officers and U.S. Marshals Service employees are, as *Egbert* underscores, reason alone to counsel hesitation. That remains true irrespective of whether Ms. Rockenhaus filed a grievance or whether any investigation was conducted related to her allegations. *Egbert* instructs that even an allegedly "inadequate" grievance process can "independent[ly]" foreclose *Bivens* relief. 596 U.S. at 497-98.

> b.      *Hyde Amendment and Criminal Process*

Another "special factor counselling hesitation" is what Congress has "already done to address injuries of the sort Plaintiffs have allegedly suffered." *Farah v.*

*Weyker*, 926 F.3d 492, 501–02 (8th Cir. 2019). First, the Hyde Amendment "allows courts to award attorney fees to criminal defendants who prevail against 'vexatious, frivolous, or bad-faith' positions taken by the government." *Id.* Additionally, those who are wrongly convicted and sentenced may seek release under 28 U.S.C. § 2255 or sue the government for damages. *Id.* (citing 28 U.S.C. § 1495 (creating a cause of action for damages "by any person unjustly convicted of an offense against the United States and imprisoned") and 28 U.S.C. § 2513(e) (capping the damages available for wrongful imprisonment)). *Bivens* plaintiffs might not be satisfied with these options if they are not available to them, but a plaintiff's ineligibility for these remedies "actually cuts against recognizing a new cause of action" because it would "upset the existing 'remedial structure.'" *Id.* at 501-02. "The fact that Congress has expressly provided a damages remedy for some victims of this particular type of injury, but not for others, suggests that it considered the issue and made a deliberate choice. This is a 'convincing reason' not to imply a second, distinct 'freestanding remedy in damages.'" *Id.* at 502.

        *c.*     *Systemwide Consequences.*

The "decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide," which "may make it less probable that Congress would want the Judiciary to entertain a damages suit in a given case." *Abbasi*, 582 U.S. at 136. "Even in a particular case, a court likely cannot predict the

19

'systemwide' consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a special factor that forecloses relief." *Egbert*, 596 U.S. at 493.

"[P]ermitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988) ("The prospect of personal liability for official acts . . . would undoubtedly lead to new difficulties and expense in recruiting administrators for the programs Congress has established.").

Ms. Rockenhaus seeks to expand *Bivens* to claims against probation officers and an unnamed Marshals Service employee. Yet courts are not equipped to predict the systemwide consequences of recognizing such a cause of action because such claims are "easy to allege," and courts are not positioned to weigh the costs and benefits of permitting such claims. *Sigalovskaya v. Braden,* No. 15-CV-34 (LDH), 2023 WL 6385761 at *6 (E.D.N.Y. Sept. 29, 2023), *aff'd* 149 F.4th 226 (2d Cir. 2025). Probation officers are in the unique position of being assigned to "post-conviction" offenders who could use the threat of litigation to influence their supervision. *See Schiff v. Dorsey*, 877 F. Supp. 73, 77 (D. Conn. 1994) ("[P]robation officers must not be subject to harassing and vexatious litigation brought by convicted offenders who are predictably unhappy about their sentences."). Congress

20

is "better suited to create a remedy to avoid interfering with the work of probation officers." *Bacon v. Marshall*, 2023 WL 8469937, at *3 (10th Cir. Dec. 7, 2023) (citing *Silva*, 45 F.4th at 1141; *Carvajal v. United States*, No. 3:20-CV-567-S-BK, 2021 WL 2814883, *4–5 (N.D. Tex. May 11, 2021), *report and recommendation adopted,* No. 3:20-CV-567-S-BK, 2021 WL 2808966 (N.D. Tex. July 6, 2021) ("Supervision-based *Bivens* claims . . . could possibly interfere with the difficult responsibilities of probation officers.").

Additionally, providing a *Bivens* remedy in this new context would force the Court to wade into probation policies, which counsels against a *Bivens* remedy. *See Abbasi*, 582 U.S. at 140. This problem is particularly severe for claims related to the efforts of probation officers to enforce court orders. Imposing tort liability on probation officers would impact the broader policies under which the release of prisoners into the population is managed. Routine supervision of such prisoners would have the potential to become structured by the threat of individual liability, rather than by the policy priorities of the Probation Office. If such an outcome is possible, the Court must refrain from expanding the *Bivens* remedy. *Egbert*, 596 U.S. at 493 ("[U]ncertainty alone is a special factor that forecloses relief.").

Like the probation officers, the unnamed U.S. Marshals Service employee was carrying out the orders of the Court with respect to the arrest warrant for Mr. Rockenhaus' supervised release revocation. The U.S. Marshals Service's "primary

21

role and mission" is "to provide for the security and to obey, execute, and enforce all orders of the federal courts." 28 U.S.C. § 566(a). Given the Service's "distinctive role and unique relationship with the Judiciary," extending *Bivens* to a Marshals Service employee could have systemwide consequences resulting in a "range of policy considerations" that Congress is better equipped to consider. *Orellano v. Godec*, 145 F.4th 516, 524 (4th Cir. 2025).

In sum, there are many special factors counseling hesitation. Under *Egbert*, each, by itself, is enough for the Court to "stay its *Bivens* hand." *Wilkie v. Robbins*, 551 U.S. 537, 554 (2007). But special factors are considered in the aggregate – "[t]aken together." *Chappell v. Wallace*, 462 U.S. 296, 304 (1983). The many special factors lead to only one conclusion: there is no *Bivens* remedy.

## F. The probation officer defendants are entitled to quasi-judicial immunity.

The probation officers are entitled to absolute quasi-judicial immunity for any claims arising out of their judicial functions. "[A] probation officer performing duties to ensure a probationer was complying with the terms of probation [is] entitled to quasi-judicial immunity." *Loggins v. Franklin Cnty., Ohio*, 218 F. App'x 466, 476 (6th Cir. 2007). This case arises out of decisions and actions that Defendants took as part of their judicial duties, as an arm of the Court, to supervise Mr. Rockenhaus, including the challenged actions of procuring a warrant for Mr. Rockenhaus' arrest, seizing property relating to the violations, and the alleged retaliatory acts. As such,

22

absolute quasi-judicial immunity shields the probation officers from liability. *See Huffer v. Bogen*, 503 F. App'x 455, 461 (6th Cir. 2012) (affirming grant of quasi-judicial immunity to probation officers where "the probation officers were performing a judicial function when they determined that Huffer had violated the terms of his probation"); *Frazier v. Crump*, No. 16-6687, 2017 WL 5664900, at *2 (6th Cir. Oct. 17, 2017) (affirming grant of quasi-judicial immunity to "[t]he probation officers who supervised Frazier's probation and reported his violations"); *Timson v. Wright*, 532 F.2d 552, 553 (6th Cir. 1976) (quasi-judicial immunity shields chief probation officer from liability); *Faber v. Smith*, No. 17-2523, 2018 WL 6918704, at *2 (6th Cir. June 6, 2018) ("A probation officer is entitled to absolute quasi-judicial immunity from suit on claims that arise out of his activities to ensure that the plaintiff complies with the terms of court supervision.").

**G.     The U.S. Marshals Service employee is entitled to qualified immunity.**

Even if the unnamed John Doe U.S. Marshals Service defendant is identified and served, he or she would be entitled to qualified immunity. "Qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (citation omitted). When a defendant raises qualified immunity, "the burden shifts to the plaintiff to demonstrate that the government official violated a right that was so clearly established that every

23

reasonable official would have understood that what he was doing violated that right." *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (cleaned up). Ms. Rockenhaus must identify "controlling authority in his jurisdiction at the time of the incident, or a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Kent v. Oakland Cty.*, 810 F.3d 384, 395 (6th Cir. 2016) (cleaned up).

Ms. Rockenhaus cannot offer authority demonstrating that *her* constitutional rights were violated when law enforcement allegedly transported *her husband* to jail in the manner alleged and showed *her husband* an inappropriate text message. Ms. Rockenhaus does not even allege that the challenged conduct of the U.S. Marshals Service employee rose to the level of a constitutional violation, instead calling it "misconduct." ECF No. 1, PageID.9. Even if Ms. Rockenhaus could somehow bring this claim on behalf of her husband, she cannot offer any authority, much less controlling authority or a consensus of persuasive authority, demonstrating that the alleged conduct of the U.S. Marshals Service employee violated the Constitution.

## H.     *Heck v. Humphrey* bars Ms. Rockenhaus' claims.

Ms. Rockenhaus' claims are barred by *Heck*. There, the Supreme Court held that a civil rights claim that necessarily implies the invalidity of plaintiff's criminal conviction is not cognizable unless the conviction has been overturned. *Id.* at 486–87. "The Sixth Circuit has consistently held that *Heck* bars *Bivens* actions against

24

federal officers if a ruling on the claim would necessarily imply the invalidity of a federal conviction." *Gonzales v. U.S. Dist. Ct. for the E. Dist. of Mich.*, No. 1:09-CV-541, 2009 WL 2959865, at *4 (W.D. Mich. Sept. 10, 2009). "*Heck* bars the recovery of monetary damages from a supervised release violation unless the revocation of supervised release is reversed . . ." *Coleman v. Northville Forensic Lab'y*, No. 2:19-CV-11197, 2019 WL 2433352, at *2 (E.D. Mich. June 11, 2019); *Faber*, 2018 WL 6918704, at *2 (*Heck* bars "*Bivens* claims that would undermine the validity of the district court's orders amending . . . supervised release terms.").

Ms. Rockenhaus' challenge to the pursuit of charges against Mr. Rockenhaus for violating the terms of his supervised release is inextricably tied to Mr. Rockenhaus' conviction and barred by *Heck*. Mr. Rockenhaus' conviction on the violation, after admitting to the violations, has not been overturned and, in fact, has been affirmed by the Sixth Circuit. As such, *Heck* applies. *See, e.g.*, *Reilly v. Herrera*, 622 F. App'x 832, 834–35 (11th Cir. 2015) (claim that law enforcement fabricated an arrest warrant for supervised release violation barred by *Heck*).

## CONCLUSION

For the reasons stated, the Court should dismiss the complaint with prejudice.

25

Respectfully Submitted,

JEROME F. GORGON JR.
United States Attorney


*/s/ Benjamin A. Anchill*
BENJAMIN A. ANCHILL (P70968)
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9566
Dated: April 9, 2026            benjamin.anchill@usdoj.gov

26

## CERTIFICATION OF SERVICE

I hereby certify that on April 9, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to the ECF participants in this case.

In addition, I certify that Sara Verdun, Legal Assistant assigned to the Civil Defensive Litigation Unit of the United States Attorney's Office, sent the foregoing via U.S. mail on April 9, 2026, to the following:

Adrienne Rockenhaus
15900 W. 10 Mile Rd., Ste. 211 PMB 1046
Southfield, MI  48075

/s/ Benjamin A. Anchill
BENJAMIN A. ANCHILL (P70968)
Assistant United States Attorney

27